**HALL & EVANS, LLC**
ADAM R. KNECHT, ESQ.
Nevada Bar No. 13166
knechta@hallevans.com
1160 North Town Center Drive
Suite 330
Las Vegas, Nevada 89144
(702) 998-1022
nvefile@hallevans.com
*Attorneys for Plaintiffs*

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

\* \* \*

| | |
|---|---|
| BIOREGENX, INC., a Nevada corporation; MICROVASCULAR HEALTH SOLUTIONS, LLC, a Delaware limited liability company<br><br>Plaintiff,<br>VS.<br><br>GLYCOCHECK US, a limited liability company; RNL LONEPEAK HOLDINGS, LLC, a limited liability company; HANS VINK BEHEER B.V., a Dutch private limited liability company; GLYCOCALYX RESEARCH INSTITUTE, a limited liability company; GENESIS HEALTH SCIENCES, a limited liability company; Hans Vink, individually and as owner/operator of GLYCOCHECK US; Robert Long, individually and as owner/operator of GLYCOCHECK US,<br><br>Defendants. | CASE NO.:<br><br>**COMPLAINT**<br><br>**(Jury Trial Demand)** |

Plaintiffs BIOREGENX, INC. ("BioRegenx") and MICROVASCULAR HEALTH SOLUTIONS, LLC ("Microvascular") (collectively, "Plaintiffs") hereby file this Complaint against Defendants GLYCOCHECK US, LLC ("GlycoCheck"); RNL LONEPEAK HOLDINGS, LLC; HANS VINK BEHEER B.V., a Dutch private limited liability company; GLYCOCALYX RESEARCH INSTITUTE, LLC; GENESIS HEALTH SCIENCES, LLC; and

1                                                                                          KB/AK/

individuals Hans Vink and Robert Long, individually and as owner/operators of GlycoCheck (collectively, "Defendants"), and in support thereof allege as follows:

## NATURE OF CASE

1. This action arises out of Defendants' knowing and willful, unauthorized use of Plaintiffs' federally registered Patents U.S. Patent No. 9,943,572 ("the '572 Patent"); Plaintiff's assignee rights to U.S. Patent No. 8,759,095 ("the '095 Patent"); and the federally registered "GLYCOCHECK" and "ENDOCALYX" service marks. Specifically, this action is for patent infringement under 35 U.S.C.S § 271; service mark infringement in violation of the federal Lanham Act, 15 U.S.C. § 1114(1); unfair competition in violation of the federal Lanham Act, 15 U.S.C. § 1125(a) and Nevada state common law; breach of contract; trademark dilution in violation of Nevada Revised Statute § 600.435; and copyright infringement under 17 U.S.C. § 501. Plaintiffs seek damages, an accounting of Defendants' profits, recovery of Plaintiffs' reasonable costs and attorneys' fees, and temporary, preliminary, and permanent injunctive relief.

## PARTIES

2. Plaintiff BioRegenx, is a corporation under the laws of the State of Nevada, having its principal place of business located at 7407 Ziegler Road, Chattanooga, Tennessee 37421.

3. Plaintiff Microvascular, is a Delaware limited liability company wholly owned by BioRegenx, having its principal place of business located at 7407 Ziegler Road, Chattanooga, Tennessee 37421.

4. Defendant Glycocheck, is a Domestic Limited Liability company under the laws of the State of Utah, having its registered address at 7 South Lone Peak Dr., Alpine, UT 84004.

5. Defendant RNL Lonepeak Holdings, is a Domestic Limited Liability company under the laws of the State of Utah, having its registered address at 7 South Lone Peak Dr., Alpine, UT 84004.

6. Defendant Hans Vink Beheer B.V. ("Hans Vink Beheer") is a private limited

HALL & EVANS, LLC
1160 North Town Center Drive
Suite 330
Las Vegas, Nevada 89144
(702) 998-1022

liability company (besloten vennootschap met beperkte aansprakelijkheid) organized under the laws of the Netherlands, with its principal office located at Groot-Haasdal 3, 6333 AV Schimmert, the Netherlands (Branch number: 000027261867).

7. Defendant Glycocalyx Research Institute, is a domestic limited liability company organized under the laws of the State of Utah, with its registered agent located at 5255 N. Edgewood Drive, Suite 300, Provo, Utah 84604, and a mailing address at 7 South Lone Peak Drive, Alpine, Utah 84004.

8. Defendant Genesis Health Sciences, is a Domestic limited liability company organized under the laws of the State of Wyoming, with its registered agent located at 30 N. Gould Street, Suite R, Sheridan, Wyoming 82801, and its principal office located at 7 South Lone Peak Drive, Alpine, Utah 84004.

9. Upon information and belief, Defendants have repeatedly formed and operated new corporate entities to continue the same infringing conduct under different names. In addition to GlycoCheck US, Defendants have organized and/or controlled RNL Lonepeak Holdings, LLC; Hans Vink Beheer B.V.; Glycocalyx Research Institute, LLC; and Genesis Health Sciences, LLC. These entities serve as alter egos of the individual Defendants Hans Vink and Robert Long and are part of a coordinated effort to avoid liability while continuing to misappropriate Plaintiffs' intellectual property.

10. Defendant Hans Vink is an individual who is believed to reside in Virginia and maintain residency in the Netherlands; however, Defendant's exact current location is unknown at this time. Plaintiffs allege, on information and belief, that Defendant Vink has directed, participated in, or benefited from the infringing conduct alleged herein, and is sued herein both individually and as owner/officer of Glycocheck.

11. Defendant Robert Long is an individual believed to be residing at 7 South Lone Peak Dr., Alpine, UT 84004. Plaintiffs allege, on information and belief, that Defendant Long has directed, participated in, or benefitted from the infringing conduct alleged herein, and is sued herein both individually and as owner/officer of Glycocheck.

12. Plaintiffs are informed and believe, and thereon alleges, that Defendant Glycocheck is the alter ego of Defendants Hans Vink and Robert Long, who exercised such domination and control over Glycocheck, that its separate corporate existence should be disregarded.

## JURISDICTION AND VENUE

13. This is a civil action for patent infringement arising under the patent laws of the United States, 35 U.S.C. § 1 *et seq.*, the trademark laws of the United States, 15 U.S.C. § 1051 *et seq.*, and the trademark laws of the State of Nevada.

14. This Court has subject matter jurisdiction over this case under 28 U.S.C. §§ 1331 and 1338(a) and (b); and 28 U.S.C. § 1367.

15. Injunctive relief is authorized by 35 U.S.C. § 283 and 15 U.S.C. § 1116.

16. Venue is proper in this Court pursuant to 28 U.S.C. §§ 1391 and 1400 because the events giving rise to the claims asserted herein occurred in this District, Defendant has committed acts of infringement in this District, and Plaintiff is an entity formed under the laws of the State of Nevada.

17. This Court also has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because Plaintiffs have stated claims under, *inter alia*, the Lanham Act, 28 U.S.C. § 1125(a)(1)(A) and (B). This Court also has subject matter jurisdiction the amount in controversy exceeds seventy-five thousand dollars ($75,000.00).

## FACTUAL BACKGROUND

18. Plaintiffs are a health and wellness brand focusing on vascular health, specifically targeting the endothelial glycocalyx—a thin, protective layer lining blood vessels. Plaintiffs have been one of the top innovators in the development of supplements and technology to support the glycocalyx.

19. Plaintiffs entered into a working partnership and agreement as stockholders ("Stockholders' Agreement") with Defendants Hans Vink and Robert Long to further research and developments in glycocalyx-focused health products, including the formulation, testing, and

commercialization of vascular support supplements based on the patented technology.

20. Terms of the Agreement include but are not limited to: non-disparagement, non-solicitation, and non-competition.

21. Further, Defendant Robert Long entered into multiple non-disclosure and non-circumvention agreements ("NDAs") detailing restrictions on disclosure, use of confidential and protected information, and circumvention and attempts to circumvent Plaintiff's business contacts such as employees and vendors.

22. Microvascular owns all rights, title, and interest in the '572 Patent entitled "SYNERGISTIC GLYCOCALYX TREATMENT COMPOSITIONS AND METHODS," which was duly and legally issued by the United States Patent and Trademark Office on April 17, 2018. Plaintiff is the owner of the '572 Patent. A true and complete copy of the '572 Patent is attached hereto as **Exhibit 1.**

23. The '572 Patent covers a unique blend of natural ingredients designed to support and repair the glycocalyx—the protective lining inside blood vessels. A healthy glycocalyx is critical for good circulation, heart health, and reducing inflammation.

24. Microvascular's patented formula works by combining specific ingredients that help repair damage, protect the glycocalyx from stress, and support its natural rebuilding process. This multi-step approach offers broader and more comprehensive support compared to products that focus on just one of the above areas of vascular health.

25. Microvascular has developed this formula after extensive research and testing. The result is an innovative product that assists the body in protecting and maintaining blood vessel function.

26. Products covered by the '572 Patent are now on the market and promoted for their ability to improve circulation, reduce inflammation, and support heart and vascular wellness.

27. Microvascular, as assignee, owns all rights, title, and interest in the '095 Patent entitled "DIAGNOSTIC AND THERAPEUTIC TOOLS FOR DISEASES ALTERING VASCULAR FUNCTION", which was duly and legally issued by the United States Patent and

HALL & EVANS, LLC
1160 North Town Center Drive
Suite 330
Las Vegas, Nevada 89144
(702) 998-1022

Trademark Office on June 24, 2014. Plaintiff maintains a claim as assignee of the '095 Patent. A true and complete copy of the '572 Patent is attached hereto as **Exhibit 2**.

28. Plaintiffs are the lawful owners of one or more federally registered trademarks with the United States Patent and Trademark Office relating to their glycocalyx treatment products and associated branding. These trademarks, which include but are not limited to "GLYCOCHECK"[1] are valid, subsisting, and in full force and effect. Plaintiffs have used these marks continuously in commerce in connection with their goods and services and have developed substantial goodwill under those marks.

29. After collaborating with Plaintiffs while furthering research, gaining access to proprietary research, product formulations, and confidential business strategies, Defendant Robert Long was terminated on October 13, 2023, and Defendant Hans Vink resigned shortly after on October 16, 2023.

30. Following their departure, Defendants began promoting and selling products that are identical to the patented technology and core formulation protected under the '572 Patent, despite having no rights, license, or authorization to use the patented invention.

31. To promote and sell their competing products, Defendants wrongfully took control of domain names that had been created, developed, and paid for by Plaintiffs, including glycocalyx.com, microvascularhealth.com, glycocheck.com, and glycodoc.com. Although Plaintiffs created and operated these websites and bore all costs for their development, Defendants Long and Vink failed to transfer the domain registrations to Plaintiffs after Long's termination and Vink's resignation. Instead, Defendants caused the domain glycocalyx.com to redirect to a new website operating under the name "Glycocalyx Research Institute," and caused glycocheck.com to redirect traffic to glycocalyx.com, thereby depriving Plaintiffs of the rightful use of their own domains.[2]

32. This redirection was designed to mislead consumers into believing they were

---

[1] *See* "Glycocheck" Registration Information, **attached hereto as Exhibit 3**.
[2] *See* glycocheck.com (which auto forwards to https://glycocalyx.com/pages/glycocheck); *see also* Glycocalyx101.com (which auto forwards to https://glycocalyx.com/).

engaging with Plaintiffs' products, when in fact they were being routed to Defendants' infringing offerings.

33. As a result of Defendants' redirection tactics, Plaintiffs were forced to create a new domain, glycocheckpro.com, in order to continue conducting business and to minimize confusion among customers.

34. On November 10, 2023 Defendants Robert Long and Hans Vink were informed of the termination the license agreement under which they previously claimed rights to the above patented technology, thereby revoking any authorization to use the patents at issue.

35. On May 15, 2024, Plaintiff sent cease-and-desist letters to Defendants Robert Long and Hans Vink, notifying them that the patents at issue had been validly assigned to Plaintiff and demanding that they immediately cease their unauthorized use of the patented technology. Defendants received notice of Plaintiff's ownership and exclusive rights but have continued to use the patented inventions without authorization.

36. As a direct result of Defendants' unauthorized use of Plaintiffs' trademarks, website content, and branding, Plaintiffs continue to receive inquiries from confused customers who mistakenly believe that Defendants' products are affiliated with or originate from Plaintiffs. In many cases, Plaintiffs are forced to correct this confusion and direct customers to Plaintiffs' actual website and legitimate products. This ongoing confusion harms Plaintiffs' business, undermines customer trust, and interferes with Plaintiffs' ability to maintain consistent branding and control over their reputation in the marketplace.

37. Defendants' website unlawfully copied large portions of Plaintiffs' original website, including layout, images, product descriptions, scientific explanations, and other proprietary content. In many instances, the language was taken verbatim, reflecting a deliberate and knowing attempt to capitalize on Plaintiffs' work and market reputation.[3]

38. In addition to copying website content, Defendants used Plaintiffs' registered trademarks and brand identifiers on their own site and marketing materials without authorization.

---

[3] *Compare* Plaintiffs' website https://glycocheckpro.com/ *with* Defendants' website https://glycocalyx.com/pages/glycocheck-new.

Specifically, Defendants used the "GLYCOCHECK" and "ReVASCA" marks.

39. These marks were used to create the false impression that Defendants' products were affiliated with, endorsed by, or otherwise connected to Plaintiffs.

## COUNT ONE

### Infringement of the '572 Patent

40. Plaintiffs repeat, reallege and incorporate each and every paragraph contained above as though fully set forth herein.

41. Plaintiffs are the owners of all rights, title, and interest in and to the '572 Patent, including the right to enforce the patent and to recover for any past, present, and future infringement.

42. The '572 Patent covers a specific combination of natural compounds and methods for using those compounds to promote vascular health by supporting the endothelial glycocalyx.[4]

43. Without authorization or license from Plaintiffs, Defendants have made, used, sold, offered for sale, and/or imported products that contain the same or substantially the same combination of ingredients claimed in the '572 patent.

44. Defendants' conduct constitutes direct infringement of one or more claims of the '572 patent in violation of 35 U.S.C. § 271(a).

45. Upon information and belief, Defendants had actual and constructive knowledge of the '572 patent, yet continued their infringing conduct willfully and in disregard of Plaintiffs' rights.

46. As a result of Defendants' unlawful infringement, Plaintiffs have suffered and will continue to suffer damages, including lost profits, harm to business relationships, and irreparable injury for which there is no adequate remedy at law.

47. Plaintiffs are entitled to damages adequate to compensate them for the infringement, together with prejudgment interest, and seek enhanced damages and attorneys' fees due to the willful nature of Defendants' conduct under 35 U.S.C. §§ 284 and 285.

---

[4] *See* Chart Supporting Asserted Claims and Infringement Contentions Concerning U.S. Patent No. 9,943,572 attached hereto as **Exhibit 4**.

KB/AK/

48. Plaintiffs also seek injunctive relief under 35 U.S.C. § 283 to prevent further unauthorized use, sale, or distribution of infringing products by Defendants.

## COUNT TWO

## Infringement of the '095 Patent

49. Plaintiffs repeat, reallege and incorporate each and every paragraph contained above as though fully set forth herein.

50. Plaintiffs are rightful holders of rights, title, and interest in and to the '095 Patent, including the right to enforce the patent and to recover for any past, present, and future infringement.

51. The '095 Patent covers a system with Patented Software and Patented Hardware that can be used by healthcare professionals to identify and monitor the contribution of microvascular dysfunction and glycocalyx damage during disease development.[5]

52. Without authorization or license from Plaintiffs, Defendants have made, used, sold, offered for sale, and/or imported products that contain the same or substantially the same combination of ingredients claimed in the '095 patent.

53. Defendants' conduct constitutes direct infringement of one or more claims of the '095 patent in violation of 35 U.S.C. § 271(a).

54. Upon information and belief, Defendants had actual and constructive knowledge of the '095 patent, yet continued their infringing conduct willfully and in disregard of Plaintiffs' rights.

55. As a result of Defendants' unlawful infringement, Plaintiffs have suffered and will continue to suffer damages, including lost profits, harm to business relationships, and irreparable injury for which there is no adequate remedy at law.

56. Plaintiffs are entitled to damages adequate to compensate them for the infringement, together with prejudgment interest, and seek enhanced damages and attorneys' fees due to the willful nature of Defendants' conduct under 35 U.S.C. §§ 284 and 285.

---

[5] *See* Chart Supporting Asserted Claims and Infringement Contentions Concerning U.S. Patent No. 8,759,095 attached hereto as **Exhibit 5**.

57. Plaintiffs also seek injunctive relief under 35 U.S.C. § 283 to prevent further unauthorized use, sale, or distribution of infringing products by Defendants.

## COUNT THREE

### Trademark Infringement in Violation of the Lanham Act, 15 U.S.C. § 1125(a)

58. Plaintiffs repeat, reallege and incorporate each and every paragraph contained above as though fully set forth herein.

59. Plaintiffs are the owners of valid and enforceable federal trademark registrations with the United States Patent and Trademark Office, including but not limited to the "Glycocheck" mark, registered under U.S. Trademark Registration No. 7694222.

60. Plaintiffs have continuously used "Glycocheck" in interstate commerce in connection with their glycocalyx-supporting supplements and related goods and services. As a result, "Glycocheck" has developed significant goodwill and is widely recognized in the marketplace as identifying products originating from Plaintiffs.

61. Without Plaintiffs' consent or authorization, Defendants have used "Glycocheck", or confusingly similar variations of it, in connection with the advertising, promotion, and sale of competing products.

62. Defendants' unauthorized use of "Glycocheck" is likely to cause confusion, mistake, or deception among consumers as to the origin, sponsorship, or affiliation of Defendants' products, in violation of 15 U.S.C. § 1114(1).

63. Upon information and belief, Defendants' infringement has been willful, intentional, and done with full knowledge of Plaintiffs' rights in "Glycocheck".

64. As a result of Defendants' conduct, Plaintiffs have suffered and will continue to suffer irreparable harm to their business, reputation, and goodwill for which there is no adequate remedy at law.

65. Plaintiffs are entitled to injunctive relief under 15 U.S.C. § 1116, an award of Defendants' profits and Plaintiffs' actual damages under 15 U.S.C. § 1117(a), and, due to the willful nature of the infringement, enhanced damages and attorneys' fees.

## COUNT FOUR

### Breach of Contract

66. Plaintiffs repeat, reallege and incorporate each and every paragraph contained above as though fully set forth herein.

67. Plaintiffs and Defendants entered into binding contractual agreements, including the Stockholders' Agreement and the NDA. These agreements governed the parties' rights and obligations in connection with, but limited to, research, development, and commercialization of glycocalyx-focused health products, including supplements based on Plaintiffs' patented technology.

68. The Agreements included, among other things, provisions prohibiting disparagement, solicitation of customers or employees, and competition with Plaintiffs' business. The NDA further restricted Defendants from disclosing confidential information, misusing proprietary information, or circumventing Plaintiffs' business relationships.

69. Defendants have materially breached these agreements by, among other acts:

   a. Misappropriating confidential and proprietary information belonging to Plaintiffs;

   b. Disparaging Plaintiffs' business and products in the marketplace;

   c. Soliciting or attempting to solicit Plaintiffs' customers, employees, and business partners;

   d. Directly competing with Plaintiffs by marketing and selling glycocalyx-focused products derived from Plaintiffs' proprietary research;

   e. Circumventing Plaintiffs' contractual and business relationships in order to redirect opportunities to Defendants' own venture.

70. As a direct and proximate result of Defendants' breaches, Plaintiffs have suffered damages, including loss of business opportunities, loss of goodwill, and economic injury. Plaintiffs are entitled to all remedies available at law and equity, including actual damages, restitution, disgorgement of profits, and injunctive relief to prevent further breaches.

## COUNT FIVE

### Federal Unfair Competition

71. Plaintiffs repeat, reallege and incorporate each and every paragraph contained above as though fully set forth herein.

72. Defendants have used Plaintiffs' trademark(s), branding, and trade dress in commerce in a manner likely to cause confusion, mistake, or deception as to the affiliation, connection, or association between Plaintiffs and Defendants, or as to the origin, sponsorship, or approval of Defendants' goods or services.

73. Defendants' unauthorized use of names, marks, and design elements that are identical or confusingly similar to Plaintiffs' has created a false designation of origin and constitutes unfair competition in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

74. Defendants' conduct is willful, intentional, and undertaken with the purpose of misleading consumers and unfairly competing with Plaintiffs.

75. As a direct and proximate result, Plaintiffs have suffered and will continue to suffer irreparable harm for which there is no adequate remedy at law. Plaintiffs are entitled to injunctive relief, damages, and disgorgement of profits under 15 U.S.C. § 1117(a).

## COUNT SIX

### Common Law Unfair Competition

76. Plaintiffs repeat, reallege and incorporate each and every paragraph contained above as though fully set forth herein.

77. Defendants have engaged in acts of unfair competition under the common law of the State of Nevada by intentionally misappropriating Plaintiffs' brand identity, goodwill, website content, and consumer-facing assets for their own commercial gain.

78. Defendants' acts include passing off, palming off, deceptive imitation, and misrepresentation of source or sponsorship, all of which are intended to confuse consumers and divert business from Plaintiffs.

KB/AK/

79. Plaintiffs have sustained actual damages and loss of business as a result of Defendants' unlawful conduct. Plaintiffs are entitled to damages, injunctive relief, and any other relief the Court deems just and proper under Nevada law.

### COUNT SEVEN

### Intentional Interference with Prospective Economic Advantage

80. Plaintiffs repeat, reallege and incorporate each and every paragraph contained above as though fully set forth herein.

81. Plaintiffs had current and prospective contractual relationships with researchers, hospitals, doctors, and distributors.

82. Defendants knew of these current and prospective contractual relationships.

83. Defendants intended to harm Plaintiffs by interfering with these current and prospective contractual relationships.

84. Defendants had no privilege or justification to interfere with these current and prospective relationships.

85. As a direct and proximate cause of the intentional interference with Plaintiffs' current and prospective economic advantage by Defendants, Plaintiffs have been damaged in an amount to be determined at trial

86. As a direct and proximate cause of the intentional interference with Plaintiffs' current and prospective economic advantage by Defendants, which was characterized by fraud, oppression, or malice, express or implied, Plaintiffs are entitled to an award of punitive damages, in an amount to be proven at trial.

### COUNT EIGHT

### Cybersquatting in Violation of the Lanham Act, 15 U.S.C. § 1125(d)

87. Plaintiffs repeat, reallege and incorporate each and every paragraph contained above as though fully set forth herein.

88. Plaintiffs own and have rights in one or more distinctive trademarks, including "Glycocheck" and "ReVasca", which are either federally registered or published for opposition.

KB/AK/

89. Plaintiffs use and have either used these marks in connection with their official website and online sales platforms, or have filed for trademark protection of the mark, and have developed strong brand recognition and goodwill among consumers.

90. Defendants registered, trafficked in, and/or used domain name(s) that are identical or confusingly similar to Plaintiffs' mark(s), including but not limited to glycocalyx.com, with the bad faith intent to profit from Plaintiffs' established trademarks and goodwill.

91. When consumers attempt to visit Plaintiffs' original website at glycocheck.com, they are automatically redirected—without consent or authorization—to a website controlled by Defendants. This redirection creates the false impression that Defendants' site is affiliated with or endorsed by Plaintiffs and is part of Defendants' broader scheme to trade on Plaintiffs' goodwill, mislead customers, and divert sales.

92. Defendants' domain name(s) were used to redirect consumers to websites offering competing products, creating a false impression of affiliation with Plaintiffs and misleading consumers as to the origin, sponsorship, or approval of the goods offered on those websites.

93. Upon information and belief, Defendants had actual knowledge of Plaintiffs' trademarks and adopted the domain name(s) intentionally to divert consumers and capitalize on Plaintiffs' reputation.

94. Defendants' actions constitute cybersquatting in violation of 15 U.S.C. § 1125(d).

95. Plaintiffs have suffered and will continue to suffer irreparable harm as a result of Defendants' actions and are entitled to statutory damages, injunctive relief, and the transfer or cancellation of the infringing domain name(s) pursuant to 15 U.S.C. § 1125(d)(1)(C) and § 1117(d).

96. Defendants have intentionally diverted the Glycocheck.com domain name to Defendants' glycocalyx.com domain.

## COUNT NINE

### Copyright Infringement

97. Plaintiffs repeat, reallege and incorporate each and every paragraph contained

above as though fully set forth herein.

98. Plaintiffs are the sole and exclusive owners of the original website content located at glycocheckpro.com, including but not limited to written text, product descriptions, marketing language, page layout, and branded digital assets. This content is an original work of authorship, fixed in a tangible medium of expression, and subject to copyright protection under the laws of the United States.

99. Defendants unlawfully reproduced and published significant portions of Plaintiffs' copyrighted website content without permission or license. Defendants' webpage[6] contains exact or substantially similar language copied from Plaintiffs' original site. For example, both websites include the description:

> *GlycoCheck is the only system that allows researchers to unravel the mysteries of microcirculation and how its breakdown contributes to the development of various diseases.*[7]

100. In addition to the verbatim copying, the overall structure, layout, and presentation of the infringing page mirrors Plaintiffs' website, including the use of identical headings, content sequencing, and marketing language. Defendants also reused Plaintiffs' images and icons.[8] Further demonstrating improper duplication of protected material.

101. Defendants had access to Plaintiffs' website content and knowingly copied it for use on a competing commercial site. Their reproduction and public display of this content constitutes direct copyright infringement under 17 U.S.C. § 501.

102. Upon information and belief, Defendants' infringement was willful, intentional, and executed for commercial gain, with the intent to confuse or mislead consumers and misappropriate Plaintiffs' goodwill.

103. As a result, Plaintiffs have suffered and will continue to suffer irreparable harm, including damage to their reputation, loss of control over their content, and competitive injury.

---

[6] https://glycocalyx.com/pages/glycocheck-new.
[7] *Compare* Plaintiffs' website https://glycocheckpro.com/ *with* Defendants' website https://glycocalyx.com/pages/glycocheck-new.
[8] *See* Comparison of Homepages attached hereto as **Exhibit 6.**

Plaintiffs are entitled to injunctive relief, actual or statutory damages, disgorgement of profits, and attorneys' fees pursuant to 17 U.S.C. §§ 502, 504, and 505.

### COUNT TEN

### Intentional Interference with Prospective Business Relationships

104. Plaintiffs repeat, reallege and incorporate each and every paragraph contained above as though fully set forth herein.

105. Plaintiffs have developed economic relationships with existing and potential customers. These relationships encompass a reasonably probable future economic benefit to Plaintiffs. Defendants have, and at all relevant times herein alleged to have, knowledge of such relationships.

106. Despite Defendants' knowledge of Plaintiffs' relationships with existing and potential customers, Defendants engaged in intentional conduct, as described herein, which has disrupted and interfered with and/or threatens to interfere with and disrupt Plaintiffs' relationships with those customers, thereby depriving Plaintiffs of the probable economic benefits associated with these relationships. Defendants' actions were undertaken through independently improper and unlawful means.

107. As a proximate result of such interference by Defendants with Plaintiffs' relationships with actual or prospective customers as alleged above, Plaintiffs have suffered actual damages in an amount subject to proof at trial.

108. Plaintiffs are informed and believe and thereon allege that the aforementioned acts of Defendants were willful and malicious in that Defendants committed such acts with the intent to injure Plaintiffs' business with conscious disregard for Plaintiffs' rights, thereby warranting an award of punitive damages in an amount appropriate to punish defendants and deter others from engaging in similar misconduct.

### COUNT ELEVEN

### Negligent Interference with Prospective Business Relationships

109. Plaintiffs repeat, reallege and incorporate each and every paragraph contained

above as though fully set forth herein.

110. Plaintiffs have developed economic relationships with existing and potential customers. These relationships encompass a reasonably probable future economic benefit to Plaintiffs. Defendants have, and at all relevant times herein alleged to have, knowledge of such relationships. Defendants are and at all relevant times herein alleged were aware or should have been aware that if they did not act with due care, their actions would interfere with these relationships.

111. Despite Defendants' knowledge of Plaintiffs' relationships with existing and potential customers, Defendants failed to exercise due care and engaged in conduct, as described herein, which has disrupted and interfered with and/or threatens to interfere with and disrupt Plaintiffs' relationships with those customers, thereby depriving plaintiff of the probable economic benefits associated with these relationships. Defendants' actions were undertaken through independently improper and unlawful means.

112. As a proximate result of such interference by Defendants with Plaintiffs' relationships with actual or prospective customers as alleged above, Plaintiffs have suffered actual damages in an amount subject to proof at trial.

## COUNT TWELVE

### Piercing the Corporate Veil / Alter Ego Liability

113. Plaintiffs repeat, reallege and incorporate each and every paragraph contained above as though fully set forth herein.

114. Upon information and belief, Defendant Hans Vink and Robert Long are the alter ego of Defendant GLYCOCHECK US, and there exists such a unity of interest and ownership between them that the separate personalities of the corporation and the individual no longer exist.

115. Plaintiffs are informed and believe, and thereon allege, that Defendants Hans Vink and Robert Long dominate, control, and operate GLYCOCHECK US as a mere instrumentality or conduit for their own personal benefit, including but not limited to:

    a. Comingling of funds and assets;

  b. Undercapitalization of the corporate entity;

  c. Failure to follow corporate formalities;

  d. Unauthorized diversion of corporate assets for personal use; and

  e. Using the corporate entity to shield unlawful conduct.

116. Recognition of the corporate entity as distinct from Hans Vink or Robert Long would sanction fraud, promote injustice, and lead to inequitable results—particularly where Defendants have misappropriated Plaintiffs' intellectual property and redirected business operations and consumer traffic from Plaintiffs under false pretenses.

117. Plaintiffs therefore allege that Hans Vink or Robert Long should be held jointly and severally liable for the acts of GLYCOCHECK US, including all claims alleged herein.

## COUNT THIRTEEN

### Knowledge and Willfulness

118. Plaintiffs repeat, reallege and incorporate each and every paragraph contained above as though fully set forth herein.

119. Defendants have knowingly and intentionally engaged in conduct that constitutes infringement of Plaintiffs' federally registered trademark rights and the '572 Patent.

120. Defendants have knowingly and intentionally engaged in conduct that constitutes infringement of Plaintiffs' federally registered trademark rights and the '095 Patent.

121. Defendants were fully aware of Plaintiffs' patent rights and trademark ownership through their business relationship with Plaintiffs, during which they had direct access to the patented formula and were aware of its proprietary status.

122. Defendants continued use of Plaintiffs' marks, trade dress, and patented formulations—despite any license, assignment, or authorization—demonstrates a willful disregard for Plaintiffs' intellectual property rights and a deliberate attempt to mislead customers and divert business.

123. Defendants' actions were undertaken in bad faith and with the intent to trade on the goodwill Plaintiffs have developed in their intellectual property. Such willful conduct entitles

Plaintiffs to enhanced damages, attorneys' fees, and injunctive relief.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request the Court enter judgment against as follows:

1. Declaring that Defendants have infringed the Asserted Patent(s);

2. Awarding Plaintiffs its damages suffered because of Defendants' infringement of the Asserted Patent(s);

3. For damages as provided in 15 U.S.C. § 1125(a);

4. Awarding Plaintiffs its costs, reasonable attorneys' fees, expenses, and interest;

5. Granting a permanent injunction pursuant to 35 U.S.C. § 283, enjoining Defendants from further acts of infringement with respect to the Asserted Patent(s);

6. Awarding Plaintiffs ongoing post-trial royalties for infringement of the non-expired Asserted Patent(s); and

7. Granting Plaintiffs such further relief as the Court finds appropriate.

## JURY DEMAND

Plaintiffs respectfully demand trial by jury, under Fed. R. Civ. P. 38.

DATED this 24th day of October 2025.

        HALL & EVANS, LLC

        */s/ Adam R. Knecht*
        ADAM R. KNECHT, ESQ.
        Nevada Bar No. 13166
        knechta@hallevans.com
        1160 North Town Center Drive
        Suite 330
        Las Vegas, Nevada 89144
        (702) 998-1022
        nvefile@hallevans.com
        Attorneys for Plaintiff

HALL & EVANS, LLC
1160 North Town Center Drive
Suite 330
Las Vegas, Nevada 89144
(702) 998-1022